**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALEC IACONE,<br><br>         **Plaintiff,**<br><br>   v.<br><br>HUNTER JANOFF, ALLAN JANOFF, DEBRA JANOFF, CRYSTAL PLAZA GROUP, AND CRYSTAL PLAZA CATERERS,<br><br>         **Defendants.** | Civil Action No. 19-13516 (ES) (SCM)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

  Before the Court is defendants Allan Janoff and Debra Janoff's ("Defendants") motion to dismiss Counts IV, V, and VI of plaintiff Alec Iacone's ("Plaintiff") complaint.[1] (D.E. No. 19 at 2–3). The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). As set forth below, the Court GRANTS Defendants' motion.

**I. Background**

  Allan and Debra Janoff are the parents of Hunter Janoff. (D.E. No. 1 ("Complaint" or "Compl.") ¶ 8). The Janoffs allegedly own and operate two catering and event production businesses—Crystal Plaza Group and Crystal Plaza Caterers (collectively, "Crystal Plaza"). (*Id.* ¶ 30). Allan Janoff is the owner and president of Crystal Plaza, while Hunter Janoff is a managing partner at both companies. (*Id.* ¶¶ 16, 19, 22 & 25).

---

[1]  Counts V and VI are also asserted against defendants Crystal Plaza Group and Crystal Plaza Caterers, but these claims against those defendants are not at issue for this motion to dismiss.

On or about August 19, 2018, Allan and Debra Janoff hosted a party, catered by Crystal Plaza, at their home in Short Hills, New Jersey. (*Id*. ¶¶ 29–30). The Janoffs served alcohol at the party and "hired [an entertainer], who dressed as Superman, to get drunk and entertain the guests . . . ." (*See id.* ¶¶ 32 & 34). During the party, the entertainer approached Plaintiff, "who [the entertainer] mistakenly believed had thrown his [Superman] cape into the Janoffs' pool." (*Id.* ¶ 39). Hunter Janoff, who was allegedly drunk at the time, intervened in the confrontation and "subsequently forcefully shoved [P]laintiff, twice, causing him to fall into the pool." (*Id.* ¶ 40). As a result, Plaintiff "re-tore his ACL and had to undergo a second surgery," in addition to enduring more physical therapy. (*Id.* ¶ 41).

On June 7, 2019, Plaintiff filed his complaint, alleging (i) assault, battery, and negligence against Hunter Janoff and Crystal Plaza (Counts I to III); (ii) "negligence against Allan Janoff and Debra Janoff" (Count IV); (iii) "negligent hiring and supervision" against Allan Janoff, Debra Janoff, and Crystal Plaza (Count V); and (v) a "Dram Shop Act violation" against Allan Janoff and Crystal Plaza (Count VI). (*See id.* ¶¶ 45–65). Allan and Debra Janoff move to dismiss the claims asserted against them in Counts IV, V, and VI pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See generally* D.E. No. 19 at 7–19 ("Def. Mov. Br.") at 11 (ECF Pagination)[2]).

## II.   Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[2]   Defendants filed their proposed order, notice of motion, brief, and Certificate of service as a single document under docket entry number 19. As such, unless otherwise specified, pin cites to Defendants' moving brief refer to the pagination generated by the Court's electronic case filing system.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotation marks omitted). The Court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. So, the inquiry is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus*, 641 F.3d at 563.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

**III.   Discussion**

As an initial matter, the Court notes that it is unclear whether Plaintiff's common law negligent hiring and supervision claims against Allan and Debra Janoff (Count V) are based on their status as social hosts, their roles with Crystal Plaza, or both. Plaintiff merely alleges that Allan and Debra Janoff were negligent "in view of the work or instrumentalities entrusted to" Hunter Janoff and were "negligent in supervising" him. (Compl. ¶¶ 60–61). Plaintiff's opposition

brief fails to clarify the issue as he supports his arguments with allegations regarding Allan and Debra's conduct as social hosts, as parents, and as persons who run their catering companies. (*See* D.E. No. 21 ("Opp. Br.") at 9–11 (alleging that "the Janoffs supervised the party including their family and guests" and that Allan Janoff "was owner, president, and an employee of the catering company").

The parties' arguments further confuse this issue. In response to Defendants' arguments regarding the negligence and negligent hiring and supervision claims, Plaintiff contends that "the Dram Shop Act" does not bar his claims. (Opp. Br. at 8). Plaintiff appears to refer to the phrase "Dram Shop Act" to mean the New Jersey Licensed Alcoholic Beverage Server Fair Liability Act (the "Licensed Server Liability Act"). (*See* Opp. Br. at 3 (stating that the Complaint alleges that Defendants "committed a Dram Shop violation, not a Social Host violation")). However, Defendants contend that the phrase "Dram Shop Act" is the colloquial term for two statutes: the Licensed Server Liability Act, as well as the New Jersey Social Host Liability Act (the "Social Host Liability Act"). (D.E. No. 23 at 3). Defendants further clarified that they moved to dismiss the negligent hiring and supervision claims based on the Social Host Liability Act, not the Licensed Server Liability Act. (*Id.*). Thus, it appears that the parties misunderstood each other's claims and arguments and disagreed on the proper meaning of the term "Dram Shop Act." As a result, the Court will consider Defendants' motion to dismiss assuming that the claims were asserted against Allan and Debra Janoff in their capacity as social hosts, as well as the persons who run Crystal Plaza, which, in turn, implicates both the Social Host Liability Act and the Licensed Server Liability Act.

### A.     Allan and Debra Janoff as Licensed Servers

####         i.     Count VI: The Licensed Server Liability Act

The Licensed Server Liability Act was created "to protect the rights of persons who suffer loss as a result of the negligent service of alcoholic beverages by a licensed alcoholic beverage server while at the same time providing a balanced and reasonable procedure for allocating responsibility for such losses." N.J. Stat. Ann. § 2A:22A-2. To further this enunciated policy goal, the Licensed Server Act provides the "exclusive civil remedy for personal injury or property damage resulting from the negligent service of alcoholic beverages by a *licensed alcoholic beverage server*." N.J. Stat. Ann. § 2A:22A-4 (emphasis added). As such, to recover damages under this statute, the plaintiff must show that: (i) the licensed alcoholic beverage server is "deemed negligent;" (ii) the injury is "proximately caused by the negligent service of alcoholic beverages;" and (iii) the injury is "a foreseeable consequence of the negligent service of alcoholic beverages." N.J. Stat. Ann. § 2A:22A-5(a).

The Social Host Liability Act, on the other hand, reflects that "New Jersey treats the negligent operation of an automobile as a special risk of intoxication, different from all other intoxicated acts." *Steele v. Kerrigan*, 689 A.2d 685, 696 (1997). Under the statute, social hosts will be liable under the statute if: (i) they "willfully and knowingly provided alcoholic beverages either [t]o a person who was visibly intoxicated in the social host's presence," or to a visibly intoxicated person "manifesting reckless disregard of the consequences as affecting the life or property of another;" (ii) the circumstances the alcohol was provided under "created an unreasonable risk of foreseeable harm to the life or property of another, and the social host failed to exercise reasonable care and diligence to avoid the foreseeable risk;" and (iii) the alleged injury resulted from "an accident caused by the negligent operation of a vehicle by the visibly intoxicated

person who was provided alcoholic beverages by a social host." N.J. Stat. Ann. § 2A:15-5.6(b)(1)–(3). Just as the Licensed Server Act offers the "exclusive civil remedy for personal injury or property damage resulting from the negligent service of alcoholic beverages by a *licensed alcoholic beverage server*," N.J. Stat. Ann. § 2A:22A-4 (emphasis added), the Social Host Liability Act provides the "exclusive civil remedy for personal injury . . . resulting from the negligent provision of alcoholic beverages by *a social host* to a person who has attained the legal age to purchase and consume alcoholic beverages." N.J. Stat. Ann. § 2A:15-5.6(a) (emphasis added).

Notwithstanding these similarities, a key distinction between the Social Host Liability Act and the Licensed Server Liability Act is that, while the Social Host Liability Act applies to social host defendants "who [are] not the holder[s] of a liquor license for the premises and [are] not required to hold a liquor license for the premises under Title 33 of the Revised Statutes," N.J. Stat. Ann. § 2A:15-5.5, the Licensed Server Liability Act specifically applies to defendants who are "licensed to sell alcoholic beverages pursuant to R.S. 33:1-1 *et seq.* or who ha[ve] been issued a permit to sell alcoholic beverages by the Division of Alcoholic Beverage Control in the Department of Law and Public Safety." N.J. Stat. Ann. § 2A:22A-3. Here, because Plaintiff does not allege that Allan and Debra Janoff are "licensed alcoholic beverage sever[s]" as defined in the Licensed Server Liability Act, (*see generally* Compl. ¶¶ 29–44), the claim asserted against Allan Janoff under the Licensed Server Liability Act must be dismissed.[3]

### ii. Counts IV and V: Negligence and Negligent Hiring and Supervision

As a preliminary matter, Plaintiff asserts negligence and negligent hiring and supervision

---

[3] The Court notes that the claim under the Licensed Server Liability Act in Count VI is not asserted against Debra Janoff. (Compl. ¶ 63). Even assuming that the claim was asserted against Debra Allan, it must be dismissed for the same reason the claim against Allan Janoff is dismissed.

claims against Allan and Debra Janoff, but only alleges that Allan is the owner and president of Crystal Plaza, and that Crystal Plaza are "family owned and operated" businesses. (Compl. ¶¶ 11 & 14). The Complaint fails to allege that Debra Janoff was employed by Crystal Plaza or has ownership in the companies. The basis for negligence and negligent hiring and supervision claims asserted against Debra Janoff is thus unclear. But even assuming Allan and Debra Janoff both have ownership in Crystal Plaza, the Court finds that the common law claims asserted against them must be dismissed because individual owners of licensed alcoholic beverage serving entities "cannot have personal liability for the alleged torts of [their] incorporated business[es]," including negligence and "negligent hiring, training and supervising of personnel." *Hottenstein v. City of Sea Isle City*, 793 F. Supp. 2d 688, 691–92 (D.N.J. 2011) (dismissing claims of negligence, negligent hiring, training, and supervision against the bar owner and stating that the plaintiffs might have had a viable Licensed Server Liability Act claim against the bar). Here, as in *Hottenstein*, Plaintiff has not alleged that Allan and Debra Janoff "used the corporate form to 'defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law'" to warrant this Court piercing the corporate veil. *Id.* at 691 (quoting *Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc.*, 950 A.2d 868, 877 (N.J. 2008)). Thus, Allan and Debra Janoff, either as owners or presidents, cannot be held personally liable for the alleged torts of Crystal Plaza. *See id.* at 691.

### B.     Allan and Debra Janoff as Social Hosts

#### i.     *Count VI: The Licensed Server Liability Act*

Plaintiff does not appear to assert claims under the Licensed Server Liability Act against Allan Janoff in his capacity as a social host. (*See* Opp. Br. at 3 (stating that Count VI "alleges that defendants committed a Dram Shop violation, not a Social Host violation")). But to the extent that

Count VI was indeed asserted against Allan Janoff in his capacity as a social host, as discussed above, the claim is dismissed for failure to allege that Allan Janoff is licensed to sell alcoholic beverages.  *See* N.J. Stat. Ann. § 2A:22A-3.

> ii.   *Count IV: Negligence*

Plaintiff alleges that Allan and Debra Janoff were negligent because they breached their duty to him by "continuing to serve defendant, H[unter] J[anoff], alcohol, or continuing to allow him to be served alcohol, despite their knowing that he was intoxicated, which was a proximate cause of [P]laintiff's above damages."  (Compl. ¶ 58).  Defendants advance two arguments in their motion to dismiss.  First, Defendants argue that Plaintiff's claims of negligence against Allan and Debra Janoff are barred by the exclusivity provision of the Social Host Liability Act.  (Def. Mov. Br. at 11).  Second, Defendants argue that "Plaintiff further fails to state a claim against the social hosts under the Social Host Liability Act as he is unable to plausibly allege the facts necessary to satisfy the final element of a cause of action under the Act."  (*Id.*).

In response, Plaintiff argues that his Complaint goes "beyond" alleging negligence resulting from Allan and Debra Janoff's "service of alcohol to Hunter" and instead "encompass[es] their failure to supervise [Hunter Janoff] despite knowing that he was intoxicated and had at least one prior physical altercation."  (Opp. Br. at 9).  Plaintiff then addresses the supervisory role Allan and Debra Janoff played as parents, as social hosts, and in the case of Allan Janoff, as the owner of Crystal Plaza.  (*Id.* at 9–11).

Under the Social Host Liability Act, New Jersey courts have repeatedly held that "[a] social host may only be directly liable to minors and to third persons injured in automobile accidents.  A social host is not liable to anyone else injured as a result of the social host's serving of intoxicating beverages to a guest."  *Componile v. Maybee*, 641 A.2d 1143, 1147 (N.J. Super. Ct. Law Div.

1994); *see also Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 431 F. Supp. 3d 518, 524 (D.N.J. 2019) ("Injuries caused by the operation of a vehicle are not at issue here, so the Social Host Statute does not apply."); *Hottenstein v. City of Sea Isle City*, No. 11-740, 2011 WL 2559523, at *2–3 (D.N.J. June 27, 2011) (dismissing plaintiff's complaint for failure to state a claim under the Social Host Liability Act where plaintiff failed to plausibly allege the injuries occurred from operation of a motor vehicle); *Steele v. Kerrigan*, 689 A.2d 685, 697 (N.J. 1997) ("The liability of social hosts in New Jersey [to an adult plaintiff] for injuries caused by their intoxicated guests has never been extended beyond injuries in automobile accidents.").

Here, Plaintiff does not dispute that Allan and Debra Janoff are social hosts as defined under the Social Host Liability Act. (*See generally* Opp. Br.; *see also* Compl. ¶¶ 29 & 33–35). Moreover, the negligent claims asserted against Allan and Debra Janoff are based on allegations that they breached their duty as social hosts by "continuing to serve defendant, H[unter] J[anoff], alcohol, or continuing to allow him to be served alcohol." (Compl. ¶ 58). Thus, implicit in Plaintiff's argument that his Complaint goes "beyond" alleging negligence resulting from Allan and Debra Janoff's "service of alcohol to Hunter" and instead includes allegations of "their failure to supervise" is an admission that negligence claims stemming from Allan and Debra Janoff's over-service of alcohol to Hunter Janoff is barred by the Social Host Liability Act. (*See* Opp. Br. at 9). As such, Plaintiff's negligence claims in Count IV of the Complaint asserted against Allan and Debra Janoff in their capacity as social hosts are dismissed.

### iii.  *Count V: Negligent Hiring and Supervision*

Plaintiff sues Allan and Debra Janoff for the "negligent hiring and supervision" of Hunter Janoff while they "knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes of" Hunter Janoff. (Compl. ¶ 61). Defendants argue that these claims "stem

9

entirely from the service of alcohol to Hunter Janoff" and are thus barred by the exclusivity provision contained in the Social Host Liability Act. (Def. Mov. Br. at 14–15). In so arguing, Defendants rely on cases interpreting the Licensed Server Liability Act, which, according to Defendants, is the "commercial counterpart" of the Social Host Liability Act. (*Id.* at 15). Plaintiff addresses negligent hiring and supervision claims and negligent claims jointly in his opposition brief, arguing, as discussed above, that the Complaint goes "beyond" alleging claims resulting from Defendants' "service of alcohol to Hunter" and that Defendants somehow assumed the duty to supervise their family and guests. (Opp. Br. at 9–11). The Court agrees with Defendants.

Plaintiff first fails to establish that, as social hosts, Allan and Debra Janoff are subject to any hiring or supervisory duty. Plaintiff appears to allege that, as parents, Allan and Debra Janoff may be liable if they "acquiesced to or were aware of excessive drinking." (*Id.* at 9). This argument is meritless. In the very case Plaintiff relies on, the court held that parents did not have a statutory or common law duty to prevent their adult underage son or his friends from drinking alcohol. *Estate of Narleski v. Gomes,* 211 A.3d 737, 739–40 (N.J. Super. Ct. App. Div. 2019). Nowhere does Plaintiff allege that Hunter Janoff was a minor or that he was engaged in underage drinking. Without any legal support, Plaintiff also appears to argue that Allan and Debra Janoff are liable for negligent supervision because "the Janoffs oversaw all aspects of planning the party" and "supervised the party including their family and guests' behavior." (Opp. Br. at 9–11). This argument mounts to nothing more than a tautology. The Court is thus not at all persuaded that Plaintiff adequately alleges facts beyond Allan and Debra Janoff's "service of alcohol to Hunter" to include allegations of "their failure to supervise him." (*Id*. at 9).

But more importantly, to the extent that Allan and Debra Janoff somehow have hiring and supervisory duties as social hosts, Plaintiff's negligent hiring and supervision claims are still

barred by the exclusivity provision of the Social Host Liability Act. Plaintiff's negligent hiring and supervision claims are based entirely on Defendants' conduct that led to Hunter Janoff's intoxication. (*See* Compl. ¶¶ 59–61). The negligent hiring and supervision claims are thus not a separate issue distinct from the negligent service of alcohol and must be excluded pursuant to the Social Host Liability Act. *See Wright v. Harrah's Atl. City Operating Co.*, No. 2331-17, 2019 WL 1423153, at *7 (N.J. Super. Ct. App. Div. Mar. 29, 2019) (holding that the negligent service of alcohol "set in motion a chain of events that eventually led to the injuries plaintiff sustained," and further, that the negligent management claim was barred by the exclusivity provision of the Licensed Server Liability Act); *see also Truchan v. Sayerville Bar & Rest., Inc.*, 731 A.2d 1218, 1225 (N.J. Super. Ct. App. Div. 1999) (holding that the common law claims for the wrongful hiring and supervision of tavern employees "all arose out of, and were related to, the negligent service of alcoholic beverages and are therefore barred by the exclusivity provisions of the [Licensed Server Liability] Act").

**IV.   Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in its entirety, and the allegations asserted against Allan and Debra Janoff in Counts IV, V, and VI of the Complaint are DISMISSED *without prejudice.* An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**